**LAW OFFICES OF KENNETH L. BAUM LLC**
Kenneth L. Baum, Esq.
201 W. Passaic Street, Suite 104
Rochelle Park, New Jersey 07662
Telephone: (201) 853-3030
Facsimile: (201) 584-0297
Email: kbaum@kenbaumdebtsolutions.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| PC LEARNING CENTERS, INC., | Case No. 25-11964 |
| Debtor.[1] | |

**DECLARATION OF TOD SHAPIRO IN SUPPORT OF DEBTOR'S SUBCHAPTER V**
**PETITION AND FIRST DAY MOTIONS**

I, Tod Shapiro, make this declaration under 28 U.S.C. § 1746:

1. I am the Vice President of PC Learning Centers, Inc., the debtor and debtor-in-possession in the above-captioned subchapter V case (the "**Debtor**"). I am familiar with the Debtor's day-to-day operations, business and financial affairs, books and records, and the circumstances leading to the commencement of the Debtor's subchapter V case (the "**Subchapter V Case**").

2. On September 9, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). The Debtor continues to operate its business and manage its

---

[1] The last four (4) digits of the Debtor's federal Employer Identification Number (EIN) is 6702.

property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. To enable the Debtor to operate effectively and minimize potential adverse effects in the Subchapter V Case, the Debtor has requested certain relief in a "first day" motion filed with the Court (the "**First Day Motion**") concurrently herewith. The First Day Motion, seeks, among other things, to satisfy, and to the extent applicable, direct its payroll service and any payroll banks to honor, pre-petition gross salaries and payroll taxes to the Debtor's employees to allow transition into subchapter V. This relief is critical to the Debtor's efforts to maximize value for the benefit of its creditors.

4. This Declaration is submitted in support of the First Day Motion. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtor's employees, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations. I am authorized to submit this Declaration on the Debtor's behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. This Declaration is intended to provide a summary overview of the Debtor's business and the need for its restructuring pursuant to subchapter V of chapter 11 of the Bankruptcy Code. Sections I and II provide a brief overview of the Debtor's business and pre-petition capital structure. Section III describes the circumstances that precipitated the commencement of the Subchapter V Case and the Debtor's objectives in the Subchapter V Case. Section IV provides a summary of the First Day Motion and the factual bases for the relief requested therein.

## I. THE DEBTOR'S BUSINESS

6. The Debtor is a New York S Corporation. I am the Vice President and Steven Shapiro is the President

7. The Debtor operates a technology conference center facility at leased space at NYC Seminar and Conference Center, 114 W 26th Street, 3rd Floor, New York, New York (the "**Premises**"). The Debtor does not own any real estate. As of the Petition Date, five (5) people were employed by the Debtor on a full-time or part-time basis.

8. For the fiscal year ending December 31, 2024, the Debtor had gross revenues totaling approximately $440,790. As of the Petition Date, the Debtor's balance sheet reflects approximately $168,060.48 in assets, which is comprised primarily of a security deposit held by the Debtor's current landlord, and approximately $2,411,108.55 in liabilities.

## II. CAPITAL STRUCTURE

### Pre-Petition Secured Debt

9. The Debtor is a party to a line of credit with Citibank, N.A., and also is indebted to the U.S. Small Business Administration. According to UCC-1 reports obtained by the Debtor pre-petition, the former creditor's lien was filed first in time. The debts owed to those creditors, as of the Petition Date, were approximately $329,647.91 and $467,477.22, respectively.

### General Unsecured Creditors

10. Pursuant to Official Form 204 filed as part of the Debtor's petition (i.e., a list of the creditors holding the 20 largest unsecured creditors), the Debtor lists unsecured claims, including disputed and undisputed claims, totaling approximately $2,664,546.04. Unsecured claims against the Debtor include loans, accrued and unpaid trade and other unsecured debt incurred in the ordinary course of the Debtor's business, and the unsecured portion of the aforementioned secured loans.

### III. THE NEED FOR SUBCHAPTER V RELIEF AND THE EVENTS COMPELLING THE COMMENCEMENT OF THE SUBCHAPTER V CASE

### The Lawsuit

11.     The Debtor has had to defend a lawsuit brought by its previous landlord, Trustees of the Masonic Hall, in the Civil Court of City of New York, docketed as LT-306022-25/NY, filed on April 8, 2025, seeking, among other relief, monetary damages for an alleged breach of contract in the amount of $1,473,477.78 plus interest and penalties.  Defending that lawsuit has caused the Debtor to divert a substantial amount of time and money, and, if a judgment were to be entered against the Debtor in any substantial amount, the Debtor's operations could be threatened by potential collection efforts.  Therefore, to preserve the continuity of the Debtor's operations and eliminate the ongoing costs of defending that action, the Debtor elected to file this petition.

### IV. FIRST DAY MOTION

12.     To minimize the adverse effects of the commencement of this Subchapter V Case on the Debtor's ability to effectuate a timely and efficient reorganization, the Debtor has filed a First Day Motion designed to facilitate its transition into subchapter V which will authorize the debtor to direct its payroll banks to honor pre-petition gross salaries and payroll taxes for its three full time and two part time employees (the "**Payroll Motion**").  *See* Evidentiary Support for First Day Motion attached as **Exhibit A**.

13.     I have reviewed the First Day Motion with the Debtor's counsel and the facts stated therein are true and correct to the best of my knowledge, information, and belief. I believe that the relief sought in the First Day Motion is tailored to meet the goals described above, is necessary and critical to the Debtor's reorganization efforts, and is in the best interests of the Debtor's estate and its creditors.

## V. **CONCLUSION**

14.     This declaration describes the factors that have precipitated the commencement of the Subchapter V Case and demonstrates the critical need for the Debtor to obtain the relief sought in the First Day Motion.

I certify under penalty of perjury that the above information is true and correct.

/s/ Tod Shapiro__
Tod Shapiro

Dated:  September 10, 2025

**Evidentiary Support for First Day Motion**[2]

**Debtor's Motion in Support of an Order: (I) Authorizing the Debtor to (A) Satisfy, and to the Extent Applicable, Direct Its Payroll Service and any Payroll Banks to Honor, Pre-Petition Gross Salaries and Payroll Taxes to the Debtor's Employees and (II) Granting Other Related Relief.**

1. Pursuant to the Payroll Motion, the Debtor seeks entry of interim and final orders (I) Authorizing the Debtor to Satisfy, and to the Extent Applicable, Direct Its Payroll Service and any Payroll Banks to Honor, Pre-Petition Gross Salaries and Payroll Taxes and (II) Granting Other Related Relief.

2. As of the Petition Date, the Debtor employs three (3) full time and two (2) part-time employees (who are paid on an hourly basis) (collectively, the "**Employees**"), all of whom work at its New York City address. Without the continued, uninterrupted services of the Employees, the Debtor's ability to efficiently conduct its business operations during the pendency of the Subchapter V Case will be threatened, and the Debtor's reorganization efforts will be severely hampered.

3. The Employees rely on their compensation from the Debtor to pay their daily living expenses and support themselves and their families. Thus, the Employees will face significant financial consequences and hardship if the Debtor is not permitted to continue its employee compensation program in the ordinary course of business. Consequently, I believe the relief requested in the Payroll Motion is necessary and appropriate.

4. In the ordinary course of business, the Debtor incurs payroll obligations to its Employees for the performance of services. Each Employee receives a paycheck (by direct

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Motion.

deposit) on the 15th and 30th day of every month, which the Debtor funds one (1) business day in advance.  On Monday, September 15, 2025, payroll for the period September 1, 2025, through and including, September 15, 2025, will be due to the Employees (the "**September 15 Payroll**").  The September 15 Payroll due the Employees includes a pre-petition period of eight (8) days, specifically, September 1, 2025 through September 8, 2025 (the "**Pre-Petition Payroll**").

5.      In addition, the Debtor is  required by law to withhold from an Employee's wages amounts related to federal and state taxes, Social Security, and Medicare taxes (collectively, the "**Trust Fund Taxes**"), and to remit the Trust Fund Taxes to the appropriate taxing authorities (collectively, the "**Taxing Authorities**").  SurePayroll, the Debtor's payroll company, calculates the withholding taxes and remits them to the appropriate Taxing Authorities in connection with each processed payroll.  Additionally, the Debtor is obligated to match from its own funds the Social Security and Medicare taxes and remit to the Taxing Authorities based on a percentage of gross payroll, additional amounts for state and federal unemployment insurance (collectively, the "**Employer Payroll Taxes**," which, together with the Trust Fund Taxes, collectively shall be referred to herein as the "**Payroll Taxes**").  The Debtor estimates that the total amount of Pre-Petition Payroll, inclusive of payroll taxes and benefits, is approximately $6,530.79.  None of the Employees will, through receipt of Pre-Petition Payroll, exceed the $17,150.00 cap contained in Section 507(a)(4) of the Bankruptcy Code.

6.      The Debtor does not maintain any employee benefits for its employees.

7.      I believe the relief requested in the Payroll Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate and is therefore justified.  I believe that without the relief requested in the Payroll Motion, Employees may seek alternative employment opportunities, which would deplete the

Debtor's workforce and hinder its ability to operate its business.  Therefore, because granting the relief requested in the Payroll Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest, I respectfully submit that the Payroll Motion should be granted.